Our next case today, number 241805, Luis Adrian Cortes-Ramos v. Enrique Martin-Morales. Will Counselor for Appellant please come up and introduce yourself on the record to begin? Good morning, Your Honors. For the record, Juan R. Rodriguez representing Luis Adrian Cortes. We are ready to proceed, Your Honor. Yes. And if I may, I would like to reserve three minutes for rebuttal. You may. I'm ready to proceed, Your Honor. Your Honor, we are before an appeal for the district court in the case of copyrights. There's two basic federal laws that we're going to be addressing. The Copyrights Act and the Federal Arbitration Act. The case was filed before the district court. And immediately there was a motion to dismiss the file by the defendant. Taking into consideration, I know that you read the brief and everything. There has been two different lawsuits. One against Sonny and one against Enrique Cortes-Ramos. Enrique Martin, which is Enrique Martin, that's his train name, for infringement of copyrights. The Sonny case was dismissed without prejudice. We filed against Enrique Martin. And in the two prior cases, no discovery was conducted at all. They were dismissed at the beginning. We appealed the case. We filed the second one against Enrique Martin. And again, a motion to dismiss was filed. We opposed, it wasn't conceived. So we asked for discovery to be conducted. No discovery was conducted on the prior cases. And we have been really, we have been emphasizing the fact that the entire record documents of everything about the contest is in the possession of Sonny. We don't have access to any document. Did you subpoena Sonny? No, your honor. We didn't have the time. We were dealing- Did you file a motion with the court to get more time? We filed a motion to ask the court to give us initial conference. That's not the same thing. They filed a motion for summary judgment. Did you file a motion saying we need more time? No, your honor. We did it before the summary judgment was filed. By asking for an initial status discovery conference? Yes, your honor. After the motion to dismiss was solved, we asked the court to allow us to conduct discovery. Immediately, the court, in the meantime, before solving that issue, the court came with this ruling that they will not, that they will allow for summary judgment to be filed for either party in, I believe it was one month or two months, something like that. And we reiterated- So there's a provision, 56D, where you would then say, Sonny has all the key documents. We don't have them. We're going to subpoena Sonny. Don't rule on the motion. Let us get the documents. What we did, we didn't. What we did was refer to the first, from the beginning of the case, of this case. Josh, we already emphasized the issue that we don't have control of any of the documents. The party who has control of the documents is not in this case. But guess what? All the documents has been provided to the co-defendant, presumably by Sonny, and submitted in the motion to dismiss. And we don't have access to those records. So there was an inference that he got it from Sonny. Since the first case. I'm talking about the co-defendant, Ricky Martin, the defendant, Ricky Martin. So we need to conduct discovery. The judge allowed, sent a motion before it was, the motion for summary judgment was filed. On the question of assigning the copyright, isn't the key issue who, whether your client signed that quick wrap agreement? That's right, your honor. Is that one of the documents you're saying you don't have? Well, what we have was, all the documents that were submitted was submitted. That document wasn't signed. It was the theory of Sonny, not the defendant, is that my client, when entering the contest back in 2014, he voluntarily submitted to the contest rules because he entered the contest. But no documents was provided saying, I mean, with the signature of my client on that document. Your client would know whether he did that or didn't do that, wouldn't he? When he got into- Did he put in evidence about, no, I never signed any such agreement? Yes, your honor, since the first case. I have been using the same affidavit from my client. And that affidavit, I thought, doesn't say he didn't sign it. He says that he didn't sign it, that he entered the contest through a web page, clicking on that web page. And there was no mention of the rules. That's what he claims. And he's in the affidavit, the same affidavit since 2015. It has not been challenged. The defendant's claim is, well- I'm sorry, the Sony case was sent, the first Sony case was sent to arbitration, correct? No, never. No, no. It was- Didn't the court rule that it was subject to arbitration? The case against Sony. Right. So it's subject to arbitration, but it's never been arbitrated. Already, your honor. Well, why is that? We choose to, because the one who actually breached the copyright was Ricky Martin, wasn't Sony. Ricky Martin was the one who published a song, which is- But you sued Sony. And that case was dismissed. That case was ordered to arbitration. It hasn't been through arbitration. But if it had gone through arbitration, wouldn't you have gotten these documents that you say that you haven't had a chance to review? No. We never went to arbitration. Sony didn't went to arbitration. And there was- Why didn't it go to arbitration? It's an important thing here, your honor. Both cases were parallel, against Sony and Ricky Martin. But the law changed. Not the law, the interpretation of the court. There was an issue of copyrights registration. And before 2019, the Supreme Court, the ruling between different circuits was that some circuits allowed certain claims of using the Copyrights Act without being registered. Very limited. Circuits vary from the east from the west. And in 2019, while the other case was already dismissed, and we were in the case against Ricky Martin, the Supreme Court rule is on the case, established that in order to have a copyrights claim, you have to have registration. And because that's when your course of action start. And you have three years. So it doesn't matter if I prepare, I compose a song. Ten years ago, when I registered that, I have three years from the registration to file a claim. And the case against Ricky Martin, the district judge says, well, you know what? Because this case has been so long, and I prevail in the different motions. I'm going to dismiss the case without prejudice, so you can refile it. The Supreme Court allowed certain circuits says, you know what? Dismiss the case without prejudice, depending case, based on the new registration, and come back, and you don't lose the rights. And- I'm sorry, are you saying that the original case that was ordered to arbitration was dismissed without prejudice? Yes, ma'am. So that's why it never went to arbitration, it's been dismissed. Without, what the court says. What happened? It's dismissed without prejudice. The case against Sony? Yes. It stayed there. What? None of the party, neither Sony or my client went on arbitration. And why did you not want to go to arbitration against Sony? That's not the reason. Is it dismissed with prejudice? Without. Is it dismissed? Without prejudice. The case against Sony. Correct. For purposes of, because it had to be arbitrated. Correct. Yes, and then you chose not to pursue arbitration against Sony. That's what happened. The Supreme Court rules that in order to- I'm not asking why you didn't. I'm just, it's true, you did not pursue the case against- That's right. But this is a situation. On 2000, we didn't have a registration yet. We filed for arbitration. I mean, not for arbitration, we filed for copyright. So after it was dismissed without prejudice to go to arbitration, you then registered the copyright. Correct? It was before. It was in 2017 because of the hurricane and everything. The US copyright issue, the registration on 2019, right before that decision. Anyway, you didn't pursue arbitration. You decided to file a new, you tried to pursue the claim in district court against Martin. Against Martin, because the only one who breached any copyrights, that's when we have the right to file a claim, is Ricky Martin. Doesn't matter who, Sony didn't breach the copyright law. It was Ricky Martin, because he was the one who published another song. And that's the breach of arbitration. With respect to this, so your, is one of your arguments that because of the affidavit, there is a material dispute of fact? Yes, Your Honor. And what did the magistrate say to that? She ruled into it, the way we see it is that Sony collaterally attacked the registration first and the entire content of the document. And Sony is not a party in this case. That's not what I'm, I'm sorry. If you agree that if the copyright was assigned to Sony, you lose. No. If it was assigned to Sony? No, we have the copyright to us, I mean, to my client. If you assigned it to Sony, you would lose. If you had assigned it to Sony, you would lose, correct? If, if, if, if. Yes, Your Honor. And the magistrate determined that on this record, there was no dispute of fact that it had been assigned to Sony, or that you hadn't met your burden to show that there was any possible basis for finding that you had kept it. Is that right or wrong? Right, may I just clarify one thing? In copyrights, you either, you can be hired for, for, for, for, there's two ways that you can get that. No, it wasn't a work for hire. We know that. It's not. We know that. So you can transfer the ownership. So you can license it. Even if, if he signed any document that hasn't been submitted, proof or anything, the court has to check, verify if which aspect of the licensing was authorized that work. Was there an allegation that it had been transferred but licensed back to him? No. No, you never, that's not in the, maybe the theoretical, So let's just stick with, I thought the basis for the ruling below was that as a matter of law on this record, no reasonable jury could conclude other than that it had been transferred. Correct. OK. And you're disputing that. Yes, you are. OK. Where did the lower court go wrong on that precise point? They say he signed after the fact, based on two things. First, when you click on that platform saying, oh, I want to enter the contest, I immediately agree on the, I signed. I immediately, it's equivalent to signing that contract. Was that contract made part of the defendant's motion? Yes. OK, so you read what it says. Yes. Is it that you dispute what it says? No, we dispute that it was not review by client. It was not part of that website. You know when you buy a cell phone that I say, I agree on these rules, link on, push under the link, whatever, and nobody reads those? You tell me if this is, I want to make sure I'm quoting the right document. Well, because we haven't been able to perform any simple. OK, this is from the opinion and order from the district court under the heading assignment rights. Correct, Your Honor. Plaintiff objects to the magistrate judge's determination that he assigned his copyright to Stoney. To start, he claims his evidence effectively contradicted the claim. OK, so we're making, we're right where we want to be. In support, he cites the docket number 69-1, which does not exist. So does it exist? It does. It was a clinical error. OK, so 69-1 is not the right. So he says, first argument you made to me as to why I'm wrong, you pointed to a document that's not there, OK? Maybe it was a mistake or whatever, but in fact, that's thumbs the brakes, OK? Next, and docket number 22, which he never referenced in his response to Martin's motion for summary judgment in opposing a statement of facts. He fails to identify any omission or oversight in the magistrate judge's examination of the evidence or the legal conclusions that followed. So he says, both of the things you say contradicted it. They are in there. Have those problems. They are in the record. It was just on the first quote, it was correctly presented and referred. On the typing of the docket number, that was the problem. But it was, it's the same. Did you file a motion for reconsideration saying, oh, no, actually, it is there? Actually, in the motion to dismiss, because that was a motion for summary judgment. It was basically the same that was included in the motion to dismiss. And we survived the motion to dismiss with the same exact number of documents. So it was in the record for the motion to dismiss, which was denied by the. I'm sorry. Was the document you're referencing correctly cited in the motion to dismiss? I mean, did the motion to dismiss not. It was correctly cited and submitted. It didn't contain the clerical error. And what I did, I was out of the jurisdiction. I filed the motion. We made a mistake about one document of the reference. And we sent, we copied the same. Sorry. But the court, the motion to dismiss was issued by the judge. Rule over that motion to dismiss was the same allegations. And she did not grant it. And the motion for summary judgment was submitted to the magistrate judge. We submit the objection to the magistrate judge report. With the wrong notation. Correct. So then, did you say, oh, sorry about that. That's the wrong document. Look at the motion to dismiss. You'll see we had the right document. You should excuse it. Please reconsider your decision. Did you do that? Let me real quick. Did you do that? Let me check, because I can't recall if I did a reconsideration to the. OK, we'll just check the record on that. But if you did, it's surprising you're not mentioning it in your brief, that I don't see it in the appendix, and that no one seems to be talking about that. And there's no ruling on that. Or that you're not appealing a denial of a. No, no, no. We'll go check the record. And what about the second document that you reference? It's an affidavit. I think you said it was number 22. The one that the panel judge is referring to is an affidavit from my client. The same that have been used in all the four-hour cases. Is the second document an affidavit? It's an affidavit from my client from 2015, April. It's on the appendix, I believe, in 91 or 95, where he clearly states, since the beginning, how he. But the reason that the magistrate judge there rejected your reliance on it is that you had not relied on it in response to the motion for summary judgment. Correct. Was that wrong? Was the magistrate wrong in saying that? To be honest, Your Honor, I was prepared for discuss all four appellate cases, because this case has come to the district court on four times. This is the fifth time. And I was out of my mind. I will not be able to remember. It's on the brief. All right, thank you. And in the reply brief, if I may just. Yeah, thanks. You have three minutes on rebuttal. Thank you, Counselor. Attorney for Appellate, please come up and introduce yourself on the record. Good morning, Your Honors. My name is Benjamin Akeley. I'm with Prior Cashman. Excuse me. Defendant and appellee Enrique Martin Morales, who is professionally known as Ricky Martin. And I appreciate your time this morning. There is no dispute of fact or principle of law that precluded the district court granting Mr. Martin's motion for summary judgment. And there is likewise no dispute of fact or principle of law. There is an affidavit, in fact, in the world. And I'm happy to start with the affidavit if Your Honors would like, if that would be helpful. I take it your first line argument is we shouldn't, for the same reasons the magistrate said we shouldn't, which it was never referenced in the opposition to the motion for summary judgment. Or is that wrong? Isn't that the magistrate's ground for not considering it? I believe that, frankly, Your Honor, I believe the affidavit was considered. And I understand what Your Honors are discussing when you're talking about the two documents that the court says didn't exist or one he never referenced. What are those documents? And why then, after saying that, is the affidavit in those two documents? I honestly don't know. 69-1, I don't know what the document was. Because again, it did not exist. And so it's just a non-document, if you will. Number 22 is? 22, I don't know off the top of my head, Your Honor. And I apologize whether 22 is the affidavit. But here's the truth, is that the affidavit is in the appellate record. It was in the record on the motion for summary judgment. In fact, it was submitted by Mr. Martin on the record for the motion for summary judgment. Plaintiff's affidavit was? Plaintiff's 2015 affidavit, because it actually doesn't disprove any of the issues. And in fact, I would submit that the affidavit, when Your Honors look at it, it's in the special appendix that we submitted. Is there a place where the magistrate judge or the district court addressed the affidavit on the content of it? I don't recall off the top of my head. I know that one of the main points that both the magistrate judge and the district judge said is that Mr. Cortez-Ramos has not actually disputed the core points here. And that the ostensible or supposed disputes of fact that Mr. Cortez-Ramos has put in the record, to the extent he has put them into the record, don't accomplish his purposes in showing that he did not agree to the contest rules. And that by the contest rules, he did not assign his copyrights in the court of appeal. Just so I understand what that means. Does that mean there is evidence in the record, affirmative evidence in the record, that he signed a contract rule, an agreement to contest rule, that by virtue of signing it on its face assigns the rights to Sony? Yes, Your Honor. And what is that affirmative evidence? OK, so there's a number of pieces of affirmative evidence. So in connection with our motion for summary judgment, we submitted a declaration from a woman named Colleen Christie at Sony. And she described the requirements for all entrants to be involved in the contest. Where's the document that you are alleging he signed that assigned his rights away? There's got to be one document, or maybe one document, that references some other document that accomplishes that legal task. There's multiple documents, Your Honor. In which he signed it? Yes, so there's the contest rules themselves. And you have his signature on it? He submitted a click wrap signature to the contest rules, Your Honors. And as Your Honors have already determined. And that's in the record? That is in the record, absolutely. The him pushing the, what does that look like in the record? So what we have is we have the declaration from Ms. Christie, which says the only way for anybody to enter the contest was to click the button that says I acknowledge and agree to the contest rules, and I will abide by them. We got her, we're trying to figure out the process. We're trying to figure out what documents he would have seen that you are saying allowed him to assign away his rights. OK, so the first of those documents is the contest rules. OK, so the rules are in the record? The rules are in the record, absolutely. They're in the special appendix. They start at special appendix 54. The contest rules, he had to click I acknowledge and agree to the contest rules. He click wrapped agreed to the contest rules in order to enter the contest. There was no way to enter the contest without doing that. And is a copy of that click page in the record? No, Your Honor, it's not. But there is the declaration from Ms. Christie explaining how the contest entrance process  And in his affidavit, he says, that's not how I entered, correct? No, Your Honor, actually not. What does he say? And that's why I don't really have a problem. Does he say I entered the way Ms. Christie testifies you have to enter? Well, this affidavit that he's discussing preceded Ms. Christie's declaration, but here's what he does say. Based on the information contained in the videos and the promotion published, I entered the contest by registering in a web state of the SuperSong, which is the name of the contest, and by late 2013. On January 2, 2014, I upload his music video to YouTube and later to the SuperSong's web page slash site. So he admits in his affidavit that he entered the contest pursuant to the information contained in the videos and the promotion published. And in fact, he's I thought he later says I may have done that in some other country through some other website from another country where the rules wouldn't have been visible to me. So I'll address that, Your Honor, although I do want to read one other line from the affidavit that he says, he says, in accordance with the published contest rules, and then he goes on to describe the way the finalization process. So let's talk about what Your Honor is saying with respect to the two. So first of all, and the magistrate judge and the district court judge both recognizes, he doesn't actually say I did enter the contest through some other country's process or some other country's website. He just speculates that that may have happened. But he doesn't say I did enter it through the kind of page that would line up necessarily with Ms. Christie's testimony. Here's the only evidence in the record on this point. The only evidence in the record is Ms. Christie's declaration, which says the only way to enter this contest was through the contest website. The jury would have to believe her? That required that. Well, again, Your Honor, it's undisputed evidence. That's the standard on summary judgment. We have undisputed evidence. What we have is he's describing the procedure based on his recollection of how he did what he did. Actually, that's not true, Your Honor. Can I read the paragraph that I think is the paragraph? So this is what the magistrate judge says. Plaintiff does not contend that he submitted an entry to the contest and uploaded the video. His argument is that he did not assent to the content rules because he joined through Sony Music Brazil. He also challenges the Bondell Declaration certifying how the entry worked by stating that it does not support the fact that the rules were ever followed as described. And then this is the bottom line. To properly refute an opposing party's statement, the party opposing shall submit with its opposition a separate, concise statement of facts. Plainly contesting a statement without offering factual support is not enough. So is the bottom line the magistrate judge is saying there's just no, he just, it's just an assertion by him? Is that with no, Bondell says this is how it works, this is what you had to do, and the magistrate's saying his assertion, that's not how it worked is not enough? That's exactly right, Your Honor. Again, there is no dispute. Is that right? Yeah. There is no dispute. I thought that is a dispute. Right. And the question is, is legally that ain't enough to be a dispute? But what the magistrate judge's point is that it's not, is that there isn't a dispute. That he's not actually disputing the fact of. He says he went through a website in which the rules weren't visible. He says he could have done that. That's what he says. He says he could have done that. Now, I'll note, Your Honor, that the contract. As Judge Afram read it, he says he did it. He went through Sony Brazil. His argument is he conducted his communications with Sony Brazil, not Sonic, and accessed a website designed for participants outside the United States. And then it says he challenges the declaration, certifying how the entry process worked by stating that it does not support the fact that the rules were ever followed as described. I don't think that, I think that that's not exactly what the magistrate is, that Your Honor's interpretation of it is not exactly what the magistrate is saying. The point here. Judge Afram is reading. The point here is that there is no dispute on this point. The point is that the district court thinks there was a dispute, but that the reason it doesn't count as one is because he didn't have enough support for his position. I mean, there is no support. It's not enough support. There's no support for the notion that he entered the contest any other way. And he said, I never saw the rules. Well, all right. Or I didn't enter the place where the rules were, then why is that not a disputed material fact? OK, well, let's, so first of all, Your Honor, there's a big difference between whether he saw the rules and whether he actually read and understood the rules and whether he agreed to the rules. Are you saying the magistrate judge is wrong in what Judge Afram just wrote, Brad? No, Your Honor. It sounds like you are. Because if you're not saying it's wrong, then it sounds like what the magistrate judge concluded was that the plaintiff was saying that I entered through, let's say, and I am disputing the testimony that the only way to enter it was through something that would have required me to consent to the rules. So what the magistrate judge says is, in any case, plaintiff does not contest that he submitted an entry to the contest and uploaded the COPPA video. And I think it's important, Your Honors, that we all. Well, if he did it through Brazil. He did it through a different mechanism. There is no doing it through Brazil. And in fact, the record does not reflect any affirmative statement by Mr. Cortes-Ramos that he did it differently other than as set forth in Ms. Christie's declaration. Where in the appendix is the plaintiff's affidavit? So we included the 2015 affidavit that my colleague was referencing in the special appendix at paragraph 81. And in paragraph 81, he talks all about how he is in Puerto Rico when he learns that the contest is happening. And he really wants to do the contest. He composed a song to participate in the contest. And then based on the information contained in the videos and promotion published, he entered the contest by registering in a website of the Super Song Contest in late 2013. Counselor, with all due respect, where in the appendix is the affidavit? It's special appendix 81. It begins at special appendix 81, Your Honor. OK. OK. And I also think it's really important. I'd like to make one other point very quickly to Your Honors while I can. My colleague said that there are no signed, that Mr. Cortez-Ramos never signed anything. And that is simply not true. Because above and beyond the fact that he must have clicked the click-wrap agreement, because there's no evidence in the record of him having done that. That's not true, Your Honor. There is evidence in the record. Of him having done it? Is there direct evidence of him having done that? There is evidence in the record. Is there direct evidence of him having done that? That the only way to enter the contest. Is there direct evidence of him having done that? Is there a copy of his signature? Or is there a copy of the click? I would submit, Your Honor, that the only way to enter. That's great submission. Is there anything in the, is the click page, a document in the page where I can see that it would demonstrate physically he did push it? I know there's testimony saying that's the only way in the world it could have happened. Putting that aside, is there a page in the record that shows he clicked? I don't know that that page exists, Your Honor, but I don't think it's in the record. Do you know that it doesn't exist? I don't know that it exists or doesn't exist, but I can tell you, Your Honor, to answer your question. If it existed, it's odd you haven't pointed to it. I don't know that it exists, Your Honor. I know that it's not in the record. I can tell you that. But I would like to point out what else is in the record. You know it's not in the record. I don't believe that page exists in the record. I would like to point out two things that are in the record very quickly, if Your Honors will indulge me. We know that your client's, well, the agent's affidavit, is that one of the ones you're about to talk about? It's not, Your Honor. It's the email sent by Mr. Cortes-Ramos and the two documents that Mr. Cortes-Ramos did sign, which is, again, directly contrary to what my colleague said. So Mr. Cortes-Ramos did sign an, quote, affidavit of eligibility and liability purchase agreement under oath, and in the declaration, or excuse me, the affidavit, the 2015 affidavit that he references, he admits that he signed this document. There is no dispute about the authenticity of the document. What does he sign, that document itself? That is admittedly signed and authentic. What does that document say he did? Okay, so it says a number of things. Among them, it says, I affirm and represent that I have complied with the official rules of the contest, a copy of which is attached, and that I have committed no fraud or deception in entering the contest or in claiming any prize afforded. Is it possible to comply with the official rules without assigning your right? Is it, excuse me, I'm sorry? Is it possible to comply with the rules without assigning the copyright? It is impossible to comply with the rules without having assigned the copyright. So that's pretty, so that's, you would say, direct evidence of him saying, therefore, I've done it. That he agreed to the contest rules and thereby assigned, and there's another document. Wait a minute, and that document that you just referenced said that the rules were attached. Were the rules attached? I don't know, Your Honor. They're not attached to the document as contained in the record. But again, there is an affidavit in the record from Mr. Cortez-Ramos discussing the published contest rules. So looking at his affidavit, I guess it's sort of vague. Paragraph five, based on the information contained in the videos, I, Cortez-Ramos, entered the contest by registering in a website of the SuperSong by late 2013. On January 2nd, 2014, I uploaded my video to YouTube and later to the SuperSong's webpage slash site. And is the other affidavit gonna say the SuperSong website has to be the one that has the rules? Does it have the assignment language? The Christie Declaration explains that the SuperSong website is the only website, and that's the website by which everyone must enter the contest. And I'll also note, Your Honors, since this seems to be a point of some concern for you, that the rules themselves say, these official rules apply only to entrants from the 50 United States, Puerto Rico, excluding other US possessions and territories, and the district company. By their terms, the rules apply to entrants from Puerto Rico. They actually say it again, eligibility in rules territory. Within the rules territory, this contest is open only to one, legal residents of the 50 United States and the District of Humboldtia, two, Puerto Rico. And I also would like to point out. This is helpful. Where is this Brazil coming from? OK. So there was, in the January 8th email, which, by the way, is another mechanism by which Mr. Cortez-Ramos. And just help me for my lack of familiarity with every piece of paper in this thing. The January 8th email is what? So on January 8th, an email from Sony Music, a woman named Camila Montero, she sent an email to Mr. Cortez-Ramos and said, hey, good news. You're one of the top 20 semifinalists in the contest. And she said, as set out in the official contest rules, we are writing to confirm the following. And then she has a number of bullet points, the last of which is that you reconfirm all the terms and conditions set out in the official rules. Then he writes back on January 8th, same day, to whom it may concern. With this email, I confirm that I understand all the terms and conditions mentioned in the email that I received today, January 8, 2014, at 1.23 PM. I believe what's going on with the Sony Music Brazil, Your Honor, is that Ms. Montero. That's a little bit of a weird response. That he responded to that? But he doesn't say that he agreed to anything. With this email, I confirm that I understand all the terms and conditions mentioned in the email that I received today. So I understand them all. I, it's OK, Your Honor. I mean, I think reasonable minds could differ on that. But then he does include attached to that email. That's a jury question. Well, again, it's not, Your Honor, because there's both the affidavit that I read previously and another further release and authorization. Where's the Brazil thing coming from? I'll tell you. But I would like to get to the release and authorization. We'll get there after we get to my question. Understood. I think what's going on is that I believe Ms. Montero, who sent that email, might have been an employee of Sony Music Brazil. I think that's essentially where it comes from. Now, I'll note, Your Honor, that that doesn't change anything. The email itself comes from, came from sonymusic.com. And in fact, Sony Music Brazil, Sony Music Entertainment Brazil, as is Sony Pictures Television Inc. and Sony Electronics Inc., those are all co-sponsors of the contest, including the admittedly authentic contest rules, admittedly authentic contest rules, that apply to citizens of Puerto Rico. So essentially, the entire Sony Music Brazil thing, I would submit, Your Honor, is a red herring. It doesn't create an actual dispute of fact. One last question, because we're way over. In the magistrate, in the district court's decision, is there just a magistrate decision, and then just the district court confirming it, basically? The district court considers Mr. Cortez-Ramos's objections, and in turn, and then adopts it. In the district court's opinion, I guess I just don't see the ground for the ruling being the grounds. In the magistrate's ruling, the magistrate seems to me to be giving grounds that are somewhat different than the grounds you're saying for affirmance. If you just read the words of the magistrate decisions, then you read the words of the district court's decision. And if that's wrong, I guess I'd like to know that. Because from what Judge Aframe reads in the magistrate judge's decision, it treats there as being a dispute of fact, and the problem with it is that there isn't sufficient corroborating evidence of it. Now, maybe you're saying that's really the same thing, and that what the magistrate judge was saying there is he may be arguing this, but when you look at it, he doesn't really have anything saying it. Is that the idea? Yes. That is the idea. It seems to me, reading all these things, I've now read the Christie affidavit, and she says the only way you can join this thing is to click Submit and agree to the contest rules. That's the only way. And so then the affidavit says nothing about a Brazilian website, really. It just says what I read before. So is the point, was the magistrate just saying your opposition to summary judgment is saying a thing about Brazilian websites that are different, but your affidavit doesn't say that? Christie says how it works, and so really all we have is your assertions in a pleading to the court? Right, with no evidence. That's exactly right, Your Honor, and that might have explained some of our talking past each other previously. And I'll just note that even read most generously, the evidence in the record does not even contest that the submission process was different. I got it. OK, understood. You did promise me I could get back to this release very quickly, Your Honor, and I'm going to take you up on that, and I very much appreciate your time. I just want to point out that in addition to the January email where he confirmed his agreement to the contest rules, and in addition to the affidavit where he again confirmed his agreement to the contest rules, in which he admits that he signed under oath and submitted the same day as the January email, he also submitted and signed under oath a use of contest-created materials release and authorization. Either the magistrate judge or the district court relying on this fact in its opinion? They both note this as further confirmation. Either one relying on it in their rationale for their opinion. I'm answering your question. I'll do it as concisely as possible. They both note these other documents as further confirmation of Mr. Cortez-Ramos's agreement to the contest rules by which he has signed the contest. The magistrate judge's decision, really the logic that I kind of worked through, he had to click the contest on the web page. Christie says, that's the only way you can do it. Then he doesn't say anything, really, in this affidavit that's contradictory to that. And then whatever his, I'll read his pleading later, but I assume it will say by the lawyer something about a Brazilian website. But that's not in the affidavit. So the magistrate just says, there's nothing here really but the Christie website. And that ends it. Is that the primary justification? It is, Your Honor. And the only other point I want to make is that he also assigns the rights, or at least releases and waives the rights in the work by the release and affidavit. Thank you, Your Honors. Thank you, Counsel. Will the attorney for Appellant please come up and reintroduce yourself on the record? You have a three-minute rebuttal. Your Honor, on the question of the lady that works for Sonny, she's a clerk. She's not even a niece on the affidavit. OK, that doesn't matter. Could you point to me somewhere in the affidavit of your client dated 2015, where he says, I signed up for this contest using the Brazilian website. What paragraph of the affidavit would I find that? None. Your Honor, on the two affidavits that he submit to the two, there's two emails, one of January 6th that the first lady was referring to, which is, oh, we need you to send us the password, and by the way, you agree, like the judge says, you understand what is on this email, basically. And the answer on the email is already covered. I agree. I read the email. Is there any affirmative evidence of him entering the website through any other means than the way in which the testimony or the affidavit from Christie says it can be entered? No. After five years or seven years, if Sonny had any of the single documents, they should reproduce already. You're misunderstanding my question. No, there is no, no. You're misunderstanding my question.  Sorry. The magistrate presented, we now understand. The magistrate judge treated you as having argued that he entered through this Brazilian Sony website. That's what the magistrate judge says, right, that that was your argument. Then the magistrate says there's nothing in the record to support that at all. Currently, no. This is his sworn statement. But then when we look at the sworn statement, there's no evidence of him saying that. So can you point to something in the affidavit where he does say that's how he entered? There are two affidavits, one that is four pages long. That is, at least in the record, he says this is how this happened. Basically, it's the same allegations that he put on the complaint. I say, that's how I got in. I got into the link. And the chart is four pages long. But in that affidavit, it's later, from that on, 2015, he reaffirmed that he never saw the rules. And he never clicked or anything else dealing with that rules. And the copyright act, it says specifically. Does this affidavit say anything about Brazil? Does this affidavit say anything about Brazil? Both emails. Contrary to the both. Does this affidavit say anything about Brazil? No. But you know, in that, I'm sorry, any other question? OK, in those two emails came from Brazil. Actually, if you see the date, it's not in our English format. It's from the format. Even the month, it says Jan, which is J-A-N. That's in Portuguese. So I put it on the position. Got it. It was written in Portuguese, I believe. And the heading and everything, it came from Brazil. Doesn't matter what Sonny says. It came from Brazil. Because the signature block says a Brazilian name. And she specifically says it comes from Boa, from whatever. Thank you. Thank you, thank you, thank you. I'm sorry. Time is over. May I request? Because I didn't explain my three points. I had a lot of time to explain. But we have your briefs. Thank you very much.  Thank you, Counselor. That concludes arguments in this case.